**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN J. WALSH | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IRVIN STERN'S COSTUMES, et al | : | NO. 05-2515 |
| Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| BCA EMPLOYEE MANAGEMENT | : | |
| GROUP, INC. | : | |
| 3rd Party Defendant | : | |

**MEMORANDUM**

**Baylson, J.**                                                          **August 15, 2006**

**I.      Introduction**

Currently before this Court is are two motions filed by Plaintiff Karen Walsh ("Plaintiff"
or "Walsh"): a Motion to Dismiss Defendant Irvin Stern's Costumes' Amended Counterclaims
(Doc. No. 35) and a Motion to Reinstate Retaliation Claims (Doc. No. 55).  For the reasons set
forth below, the Motion to Dismiss will be granted in part and denied in part, while the Motion to
Reinstate will be granted.

**II.      Procedural Background**

Plaintiff presents a claim of employment discrimination, alleging her former employer
fired her three weeks after she advised management that she was pregnant.  Her Amended
Complaint presents two (2) counts for pregnancy discrimination; the First Cause of Action is

1

asserted pursuant to the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"), which is a subset of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Second Cause of Action is under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et. seq* ("PHRA").  Subsumed within both was an allegation of retaliation which asserted that Defendants Irvin Stern's Costumes ("Stern's"), Pierre's Costumes ("Pierre's"),Williamson Costume Company ("Williamson Costume"), Joyce Williamson, and Richard Williamson (collectively "Defendants") threatened — via telephone and U.S. mail — to accuse her of theft and seek criminal charges against her unless she withdrew her lawsuit.

## III.    Motion to Reinstate Retaliation Claims

In her Motion to Reinstate Retaliation Claims, Plaintiff urges this Court to reinstate the previously-dismissed retaliation claims in light of the Supreme Court's recent decision in Burlington Northern & Santa Fe Ry. v. White, 548 U.S. --, 126 S.Ct. 2405 (2006).  Because Burlington Northern specifically and squarely abrogated the Third Circuit's test regarding the "adverse employment action" prong of a retaliation claim, upon which this Court relied in its January 19, 2006 opinion dismissing Plaintiff's claims for retaliation (Doc. No. 18), Walsh v. Irvin Stern's Costumes, 2006 WL 166509 (E.D. Pa. Jan. 19, 2006) ("Walsh I"), we conclude they must be reinstated.

### A.    The Court's January 19, 2006 Order Dismissing the Retaliation Claims

In Walsh I, we indicated that the Third Circuit mandated that a plaintiff demonstrate that "the employer took an adverse employment action after or contemporaneous with the employee's

protected activity" as one of three required prongs for a prima facie case for retaliation.[1]  Id. at *5.  Specifically, we noted that in Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), the Third Circuit held that in order to satisfy the "adverse employment action" element of a Title VII retaliation claim, the retaliation must affect the plaintiff's current or future employment – e.g. it must the "alter [ ] the employee's compensation, terms, conditions, or privileges of employment, deprive[ ] him or her of employment opportunities, or adversely affect[ ] his [or her] status as an employee." Walsh I, 2006 WL 166509, at *5 (citing City of Pittsburgh, 120 F.3d at 1300).  Under the facts alleged here, we then held that Defendants' actions did not adequately bear a nexus to Walsh's employment, noting:

> [t]he mere threat to accuse her of theft and seek criminal charges against her, while questionable, simply did not result in any tangible adverse employment consequences to Walsh.
> . . .
> [t]he very nature of an unfulfilled threat means Walsh can not prove that the Defendants' conduct impacted her current or future employment opportunities as City of Pittsburgh requires.

Walsh I, 2006 WL 166509, at *6.

## B.      The Supreme Court's Decision in Burlington Northern v. White

In Burlington Northern, the Court articulated a new, less stringent test for Title VII retaliation cases.  Burlington Northern, 126 S. Ct. at 2409.  Specifically abrogating the Third Circuit's test in City of Pittsburgh, and that of several other circuits, requiring that the plaintiff show an adverse employment action affecting current or future employment, the Supreme Court ruled that to sustain a claim of retaliation, a plaintiff need only show the employer's actions "would have been materially adverse to a reasonable employee or job applicant."  Id. at 2409,

---

[1] The Court did not discuss the other elements, as they were easily satisfied.

2410, 2415. Specially, it explained "material adversity" as acts that might "dissuade a reasonable worker from making or supporting a charge of discrimination." Id. Moreover, the Court clarified that Title VII's anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment," and that such claims may extend to employer actions that are unrelated to employment and/or occur outside the workplace. Id. at 2412-13.

### C.     Plaintiff Walsh's Retaliation Claim

Here, Plaintiff alleged that the Defendants "threaten[ed] to accuse Plaintiff of a crime and seek criminal charges against her unless she withdraws her employment discrimination claims," Amd. Compl. at ¶57. As stated *supra*, City of Pittsburgh's rule that Defendants' adverse action must bear some nexus to Plaintiff's current or future employment is no longer controlling law. Thus, pursuant to Burlington Northern, we agree with Plaintiff that our reasoning for dismissing her retaliation claims in Walsh I no longer holds, and we must apply the Supreme Court's new test for Title VII retaliation cases.

Applying this standard to the facts of this case, Plaintiff's retaliation claims must be reinstated.[2] Viewing all alleged facts in the light most favorable to Plaintiff, a threat to accuse Walsh of a criminal offense could certainly be construed as "materially adverse" to her. We find Defendants' argument that Burlington Northern does not apply because the Supreme Court "limit[ed] application of its standard" to cases involving "retaliation that produces an injury or harm," Defts.' Memo. at 2 (citing Burlington Northern, 126 S. Ct at 2414), and the mere threat of

---

[2]Burlington Northern is equally binding on Plaintiff's PHRA retaliation claim as on her Title VII claim, because the Third Circuit has held that Title VII and the PHRA are to be interpreted co-extensively. See, e.g., Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1084 (3d Cir. 1995) (PHRA and Title VII are "construed consistently"). A violation of one constitutes a violation of the other.

filing criminal charges against her can not satisfy this standard, unconvincing.  A fair reading of

Burlington Northern reveals that the case imposes no requirement that a threat be fulfilled.  To

the contrary, in sentences directly following the "injury or harm" language, the Court explained

that such harm is any action that causes *material adversity*, which it specifically defined as acts

that might "dissuade a reasonable worker from making or supporting a charge of discrimination."

Burlington Northern, 126 S. Ct. at 2409, 2410, 2415.  Moreover, the material adversity standard

is referenced numerous times throughout the Court's opinion, making clear that it — and not

"injury or harm" — is the defining standard of the Supreme Court's new test.  See id. at 2420

(referencing the "materially adverse employment action test").  See also id. at 2409, 2415, 2416,

2417.  Under this standard, the Burlington Northern Court concluded that the plaintiff's mere

suspension from her job — even though she was not fired and ultimately reinstated —

constituted sufficient harm to support a retaliation claim in part because of the emotional

hardship and uncertainty caused by the defendant's actions. Id. at 2417.

Moreover, it is also important to note that Burlington Northern specifically rejected the

restrictive definition of retaliation articulated in City of Pittsburgh.  We therefore find it difficult

to imagine that the Court intended to exclude from the universe of retaliation a threat to file

criminal charges if that threat is motivated to force a party to withdraw a lawsuit.  As in

Burlington Northern, "common sense suggests that one good way to discourage an employee

such as [Walsh] from bringing discrimination charges would be to [threaten to press criminal

charges against her if she did not drop the lawsuit]." Id. at 2416.  That is, we are convinced that

"a reasonable employee facing the choice between [facing criminal charges and continuing to

press her] discrimination complaint might well choose the former." Id. at 2418.

Finally, we find Defendants' argument that they merely "*urged* the withdrawal of Plaintiff's inapplicable Title VII claims, and informed her counsel of the *possible* assertion of . . . criminal charges" disingenuous.  Deft.'s Memo. at 3 (italics added).  In fact, no where does the word "possible" appear: the letter expressly states that "if you persist in prosecuting the Complaint . . . the Williamsons will press criminal charges against [Plaintiff]. . ."  Ex. A to Pl.'s Reply, *Letter from Deft. Counsel dated June 2, 2005*, at 2.  Defendants' assertion that they had a valid reason for communicating this "information" to Plaintiff is also irrelevant at the Motion to Dismiss stage, when we must accept all well-pleaded allegations in the complaint as true. F.R. Civ. P. 12(b)(6); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000). Here, Plaintiff plainly alleged in the complaint that the Defendants "threaten[ed] to accuse Plaintiff of a crime and seek criminal charges against her unless she withdraws her employment discrimination claims," which is sufficient to survive a motion to dismiss.  Amd. Compl. at ¶57. Accordingly, we conclude that Plaintiff's retaliation claims — subsumed in the First and Second Cause of Action of her Amended Complaint — will be reinstated.

## IV.    Motion to Dismiss Defendant Irvin Stern's Costumes' Amended Counterclaims

In a separate motion, Plaintiff seeks dismissal of all of Defendants' Amended Counterclaims, for failure to state a claim pursuant to F.R. Civ. P. 12(b)(6).  For the reasons set forth below, Plaintiff's Motion to Dismiss Defendant Irvin Stern's Costumes' Amended Counterclaims will be granted in part and denied in part.

### A.    Allegations in the Counterclaims

On April 28, 2006, Defendants filed their Amended Answer to Plaintiff's Amended

Complaint, which included five counterclaims.[3]  Counts I asserts intentional interference with contractual relations, alleging that Plaintiff wrongfully misappropriated Stern's proprietary customer contact information and price lists, contacting longstanding store customers and soliciting their on behalf of a future competitor by undercutting Stern's pricing.  Amd. Counterclaims at ¶¶89-95.  Count II states a claim for tortious interference with prospective business relations for allegedly preventing Stern's from entering into expected contracts with these consumers.  Id. at ¶¶96-101.  Count III alleges a breach of the duty of loyalty and Count IV alleges a breach of fiduciary duty, asserting that Walsh disregarded Defendant Joyce Williamson's instructions to obtain prior authorization and approval of all Halloween purchase orders and, while still employed as manager, Plaintiff began soliciting Stern's customers on behalf of the competitor.  Id. at ¶¶102-120.  Finally, Count V asserts that by removing confidential customer records and pricing information, Plaintiff misappropriated trade secrets. Id. at ¶¶121-129.

## B.      Legal Standard

When deciding a motion to dismiss pursuant to F.R. Civ. P. 12(b)(6), the court may grant the motion only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief.  Doug Grant, 232 F.3d at 183.  Accordingly, a federal court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).

---

[3]Defendants initially filed their Answer to the Amended Complaint with four counterclaims on March 14, 2006.

## C.    Parties' Contentions

Plaintiff first argues that Counts I and II fail to state a claim and must be dismissed pursuant to F.R. Civ. P. 12(b)(6) because Defendants failed to plead the existence of a specific existing or prospective contract with which Plaintiff interfered.  Pl.'s Motion to Dismiss at 4. She also seeks dismissal of Count I because it is duplicative of Count II.  Id. at 5.  Next, Plaintiff contends that Counts III, IV and V are time-barred.  Id. at 6.  Also, she urges that Defendants are precluded from asserting Counts III and IV because in their Amended Answer, Defendants pleaded that Plaintiff was not an employee of Stern's after December, 2000, and instead was employed by third party Defendant BCA Employee Management Group after that time ("BCA"). Id.  Finally, Plaintiff asks the Court to dismiss Defendants' claims for attorneys' fees as to each counterclaim, because there is no statutory authorization and no exception applies.  Id. at 7.

Notwithstanding Plaintiff's contentions, Defendants urge that Counts I and II are separate and distinct claims, whereby Count I asserts interference with *contractual* relations and Count II alleges interference with *prospective* business relations, for which the prima facie elements were properly plead.  Defts.' Resp. at 2.  Further, although Defendants concede they did not specifically plead the existence of a contract in Count I, they assert that allegations contained in Counts III and IV sufficiently identifies the existing or prospective contract to preclude dismissal of Count I.  Id. at 3 n.2.  As to Count II, they asserted that the allegations define a "system" whereby long-standing Stern's customers were regularly solicited on behalf of the store, and that Plaintiff interfered with the contracts it would have formed under this system.  However, to the extent that this Court finds that the Counterclaims do not adequately identify a contract, Defendants request leave to amend.  Id.  Regarding Plaintiff's contention that Counts III, IV and

8

V are time-barred, Defendants argue that the statute of limitations was tolled by the discovery rule and by the doctrine of fraudulent concealment.  Id. at 5-7.  Next, Defendants contend that Amended Counterclaims III and IV state viable breach of fiduciary duty and breach of the duty of loyalty claims, because these claims need not be asserted against employees.  Instead, agents owe both duties to principals, and in her capacity as store manager, Plaintiff was an agent of Stern's. Id. at 7-8.  Finally, as to Plaintiff's argument regarding attorney's fees, Defendants agree to withdraw their attorney's fees claims.

### D.    Discussion

#### 1.    Interference with Contractual Relations and with Prospective Business Relations (Counterclaims I and II)

Counterclaims I and II both allege that by taking Stern's proprietary customer contact information and price lists, Walsh prevented Stern's from renewing or creating new contracts with existing customers, which based on past experience, they had a significant expectation of securing, and which they actually lost.  Amd. Counterclaims at ¶¶89-101.

Under Pennsylvania law, to set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations, four elements must be pled:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party:
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

Pawlowski v. Smorto, 588 A.2d 36, 39-40 (Pa. Super. 1991).  See also Triffin v. Janssen, 626

A.2d 571, 574 (Pa. Super. 1993).  Based on this explanation of the prima facie case, it appears the difference between the torts of interference with a contractual relation and interference with a prospective contractual relation is whether the tortious interference is with a *current* contract or with a *prospective* contractual relation.  While Defendants suggest that a prima facie case involves different elements for the two torts and points to <u>Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.</u>, 801 F. Supp. 1450, 1458 (E.D. Pa. 1992) to demonstrate this,[4] a close review of <u>Advanced Power Systems</u> does not bear this view out.  <u>Advanced Power Systems</u> merely restates the law in a slightly different way.  Also, it clearly implies a current contract is required to state a claim for tortious interference with a contractual relation by noting that damage must be caused to "existing business relations." <u>Id.</u>

Plaintiff contends that Counterclaims I and II must be dismissed because: (1) the claims are duplicative, and (2) Stern's has not pled the existence of any specific contract or prospective contract with which Plaintiff interfered.   Defendants counter that the claims are separate and distinct and that they have sufficiently identified such contracts in their amended counterclaims.

As to Counterclaim I, we agree with Plaintiff that Defendants have not pled the existence of any specific current contract with which she interfered.  The specific pleadings in Counterclaim I and II both reference *future* contracts that Stern's expected to secure.  The complaint does not identify any specific current contractual relation with which Plaintiff

---

[4] <u>Advanced Power Systems</u> states that "The elements of tortious interference with contract are:··· (1) that the acts complained of were willful and intentional; (2) that they were calculated to cause damage to the plaintiff and its business; (3) that these were done with the unlawful purpose of causing damage and loss to the plaintiff without right or justifiable cause on the part of the defendant; (4) that actual damage and loss resulted." <u>Advanced Power Systems</u>, 801 F. Supp. at 1458.

interfered.  Accordingly, Defendants' tortious interference with contractual relations counterclaim (Counterclaim I) must be dismissed as a matter of law.  Defendants request for leave to amend is denied because Defendants had full knowledge of any and all contracts, and thus could have, but did not, allege the existence of an existing contract.

However, as to Counterclaim II, which asserts interference with a prospective contract, the Court finds that Defendants sufficiently state a claim.  That claim clearly states that "based upon prior dealings and experience, [Stern's] had a significant expectation of securing . . . contracts" with their longstanding customers.  Amd. Counterclaims at ¶¶99.  A prospective contract or business relation is a reasonable probability of a contract - that is, "something less than a contractual right, but something more than a mere hope." KBT Corp. v. Ceridian Corp., 966 F. Supp. 369, 376 (E.D. Pa. 1997).  While this is obviously less than a current contractual right, Stern's expectation of renewing contracts with past customers, particularly if that is the practice that had previously been followed, is certainly not unreasonable.  Moreover, in addition to this system of soliciting long-standing customers, allegations elsewhere in the complaint describe behavior that interferes with a *specific* prospective contract with an existing contract is also identified.  In Counts III and IV, Defendants alleged that when Defendant "Joyce Williamson contacted a long-standing customer about an outstanding contract proposal . . . [t]he customer told Ms. Williamson that Plaintiff contacted her and offered a better price, and the job was given to '[Plaintiff] and Eddie's store' as a result."  Amd. Counterclaims at ¶¶ 109, 120. This sufficiently alleges a specific prospective contract with which Plaintiff allegedly interfered and precludes dismissal of Counterclaim II.

### 2.    Breach of Fiduciary Duty, Breach of Duty of Loyalty, and

## Misappropriation of Trade Secrets (Counterclaims III, IV and V)

Plaintiff also urges that Defendants are precluded from asserting Counts III, IV and V for two reasons.  The first is because, in their Amended Answer, Defendants pleaded that although Plaintiff was the store manager, she was not an employee of Stern's after December 2000, and instead was technically employed by third party Defendant BCA after that time.  As the allegations concern events which allegedly took place in 2003, Plaintiff argues Defendants should be estopped from now asserting claims against Plaintiff that are inconsistent with their pleadings.  Pl.'s Motion to Dismiss at 6.  The second reason is that because Plaintiff's employment ended in November 2003, that is the latest time at which the claims can be said to have accrued.  The Pennsylvania statute of limitations period for tort actions is two years, and therefore these claims should have been filed by November 2005.  In fact, they were not filed until 2006.  Defendants counter that the statute of limitations was tolled by the discovery rule and by the doctrine of fraudulent concealment.  Id. at 5-7.  Next, Defendants contend that Amended Counterclaims III and IV state viable breach of fiduciary duty and breach of the duty of loyalty claims, because these claims need not be asserted against employees.  Instead, agents owe both duties to principals, and in her capacity as store manager, Plaintiff was an agent of Stern's.  Id. at 7-8.

The Court concludes that Counterclaims III, IV, and V are closely related and depend on similar facts.  Although the Court is doubtful about the timeliness of these claims, and Defendants have failed to plead fraudulent concealment, the claims as stated satisfy the minimal standards of notice pleading and may proceed.  We agree that whether technically employed by Defendants or by third party Defendant BCA at the time of the events in question, assuming her

12

allegation that she was store manager of Stern's is true, Plaintiff would have been an agent to Defendants and owed a fiduciary duty to them.  See McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 (E.D. Pa. 1998) (noting that "under Pennsylvania law, a fiduciary relationship exists where one person has reposed a special confidence in another" and holding that under this standard, a contracted manager of a party store was an agent of store owners and owed them fiduciary duties).  The statute of limitations issues should be explored promptly in discovery.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN J. WALSH | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IRVIN STERN'S COSTUMES, et al | : | NO. 05-2515 |
| Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| BCA EMPLOYEE MANAGEMENT | : | |
| GROUP, INC. | : | |
| 3rd Party Defendant | : | |

**<u>ORDER</u>**

AND NOW this          day of August, 2006 upon consideration of Plaintiff's motions, it is

hereby ORDERED that:

1.    Plaintiff's Motion to Reinstate Retaliation Claims (Doc. No. 55) is GRANTED;
        a.    Plaintiff's retaliation claims — subsumed in the First and Second Cause of
        Action of her Amended Complaint — will be reinstated;
2.    Plaintiff's Motion to Dismiss Defendant Irvin Stern's Costumes' Amended
        Counterclaims (Doc. No. 35) is GRANTED IN PART and DENIED IN PART;
        a.    Defendants' Counterclaim I (tortious interference with contractual relations
        counterclaim) will be DISMISSED;
        b.    Defendants' request leave to amend Counterclaim I is DENIED;
        c.    The statute of limitations issues as to Counterclaims III, IV, and V may be
        raised again in a renewed motion for summary judgment; and
3.    The Court will conduct a case management conference by telephone on Thursday,
        August 17th, 2006 at 10 a.m. to consider expedited discovery periods for the
        jurisdictional and statute of limitations issues.

BY THE COURT:

**/s/ Michael M. Baylson**

_____

Michael M. Baylson, U.S.D.J.